IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

| | | |
|---|---|---|
| DEON LOVE, | * | |
| Reg. # 08226-045 | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | No. 2:11-CV-00129-JJV |
| | * | |
| T. C. OUTLAW, | * | |
| | * | |
| Defendant. | * | |

## ORDER

Before the Court is Mr. Love's 28 U.S.C. § 2241 habeas petition. He is an inmate at the Federal Correctional Institution in Forrest City, Arkansas (hereinafter "FCI Forrest City"). Through his Petition, Mr. Love makes two claims: (1) that several actions by the Bureau of Prisons (hereinafter "BOP") during the administrative discipline process deprived him of his due process rights; and (2) that the BOP's decision to impose disciplinary sanctions after prior prosecution for the same offense violated his Fifth Amendment right against double jeopardy. The Court finds that Mr. Love's Petition should be dismissed with prejudice.

## I.   BACKGROUND

In the early morning hours of April 9, 2009, officers at FCI Forrest City ordered approximately fifteen inmates gathered on the recreation yard to disassemble. (Doc. No. 3 at 12.) Recognizing Mr. Love as the group spokesman, officers ordered him to accompany them to the office. *Id.* There the officers pat searched him and found a sharpened, eight and one-half-inch long metal object concealed under his left sleeve. *Id.* Officers immediately placed Mr. Love in administrative detention. Notably, at 8:01 a.m. the same day, Mr. Love was given an order notifying him that he was "being placed in administrative detention pending [his] violation of code #104

(possession of a weapon)." (Doc. No. 3 at 15.) At 10:45 a.m. that morning, officers prepared an incident report detailing the events of the search of Mr. Love and seizure of the metal object. (Doc. No. 3 at 12.) Officers delivered a copy of the report to Mr. Love at 11:30 a.m. *Id.*

The matter was then referred to the United States Attorney's Office for prosecution. (Doc. No. 3 at 16.) On August 24, 2009, Mr. Love pled guilty to one count of being an inmate in possession of a prohibited object in violation of Title 18, United States Code, Section 1791(a)(2). He was sentenced to twenty-seven (27) months of imprisonment and three (3) years of supervised release. (Doc. No. 3 at 16.)

On February 3, 2010, the United States Attorney's Office released the incident report for administrative processing. (Doc. No. 3 at 16.) On February 9, 2010, a Unit Disciplinary Committee (hereinafter "UDC") held a hearing. (Doc. No. 3 at 14.) The UDC advised Mr. Love of his rights and the charges pending against him and gave him an Advisement of Incident Report Delay, which explained the UDC hearing had been delayed beyond the usual amount of time due to prosecution of the 18 U.S.C. § 1791 charge. (Doc. No. 3 at 14, 17.) Upon considering all the evidence presented at the hearing, the UDC referred the matter to the Disciplinary Hearing Officer (hereinafter "DHO"). (Doc. No. 3 at 14.)

The DHO held Mr. Love's disciplinary hearing on February 26, 2010. (Doc. No. 3 at 18-19.) Based on the evidence, the DHO determined that Mr. Love committed the charged conduct and that disciplinary segregation, revocation of forty-one (41) days of good-time credit, 180 days suspension of commissary, visits and phone privileges constituted suitable sanction. (Doc. No. 3 at 18-19.)

## II.     ANALYSIS

### A.     Due Process

The record in this case is consistent with Mr. Love's allegations concerning exhaustion of his due process claim,[1] and this Court may proceed to the merits. In his Petition, Mr. Love alleges a number of due process claims. Specifically, he argues: (1) the BOP failed to "serve [him] within 24 hours of the incident"; (2) the BOP failed to give notice before forwarding the incident report to the United States Attorney; (3) the BOP never "served" him with a waiver upon referring the incident to the United States Attorney; (4) the BOP did not read him his rights until February 9, 2010; (5) the entire disciplinary process was "null and void from the beginning pursuant to [BOP] Program Statement P5270.08." Based on the exhibits submitted, these claims fail to establish a basis for habeas relief.

Despite Mr. Love's position, *Wolff v. McDonnell*, 418 U.S. 539 (1974), is both applicable and authoritative in this case. *Wolff* frames the minimum constitutional requirements for a prison disciplinary procedure that might result in the loss of good-time credits. *Wolff*, 418 U.S. at 556-64 ("Prison disciplinaries are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."); *see also Espinoza v. Peterson*, 283 F.3d 949, 951-52 (8th Cir. 2002). An inmate involved in the prison disciplinary process is entitled to three things: "(1) advance written notice of the disciplinary charges; (2) an opportunity, consistent with correctional goals and safety, to call witnesses and present a defense; and (3) a written statement of the evidence relied upon by the fact finder and the reasons for the disciplinary action." *Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007); *see also Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *Wolff*, 418 U.S. at 563-67. Furthermore, *Wolff* requires only that notice of an inmate's charged conduct be given twenty-four (24) hours before any disciplinary hearing on the matter. *See*

---

[1] Attached to Mr. Love's Petition is the letter opinion from National Inmate Appeals Administrator, Harrell Watts. (Doc. No. 3 at 10-11.)

*Wolff*, 418 U.S. at 564.

Here, Mr. Love's exhibits indicate he received adequate notice on two occasions: (1) the detention order at 8:01 a.m. on April 9, 2009; and (2) the incident report at 11:30 a.m. on April 9, 2009. (Doc. No. 3 at 12-16.) Mr. Love received both of these notices ten months before the February 9, 2010, UDC hearing. Despite his claims that he was not "served" until February 9, 2010, the staff acted consistently with requirements of due process, as he had enough time to prepare a defense. *See Brown-El v. Delo*, 969 F.2d 644, 647 (8th Cir. 1992). Consequently, there is no basis for habeas relief in the circumstances surrounding Mr. Love's notice of the charged conduct.[2]

Second, Mr. Love's other due process claims pertain primarily to the BOP's regulatory structure and are not actionable on that basis. For instance, the BOP is under no obligation, constitutional or regulatory, to notify an inmate that an incident report was referred to the United States Attorney for prosecution. *See* 28 C.F.R. §§ 541.1-.50. Additionally, the BOP is not required to "serve" a waiver on an inmate before referring an incident report for prosecution. *See id.*

Mr. Love's remaining assertions also fail to demonstrate cognizable habeas claims. His allegation that the BOP did not read him his rights until February 9, 2009, is frivolous because February 9, 2009, was the exact time the BOP was required to do so. Pursuant to 28 C.F.R. § 541.7(g), a UDC must read an inmate his or her rights before referring a matter to the DHO; this

---

[2]Mr. Love also states he did not receive the "disciplinary report" until February 3, 2010 (Doc. No. 3 at 13.) Given Mr. Love's citation to BOP Program Statement P5270.08, it is clear that Mr. Love makes a technical error by referring to the incident report as a disciplinary report. This error indicates that Mr. Love alleges that the BOP failed to comply with 28 C.F.R. § 541.5(a), which states that an inmate will "*ordinarily* receive the incident report within 24 hours of staff becoming aware of [the inmate's] involvement in the incident." 28 C.F.R. § 541.5(a) (emphasis added). Mr. Love's Exhibit C indicates the BOP complied with 28 C.F.R. § 541.5(a) by delivering the incident report to him within three and one-half hours after becoming aware of the incident. (Doc. No. 3 at 12); *see also Jones v. Cross*, 637 F.3d 841, 846 (7th Cir. 2011) (finding that noncompliance with the former equivalent of 28 C.F.R. § 541.5(a), 28 C.F.R. 541.15(a), did not constitute a violation of due process because it did not impose an "atypical or significant hardship").

typically occurs at the UDC hearing. Mr. Love's UDC hearing was on February 9, 2010, and Mr. Love's exhibits indicate the UDC read him his rights at that hearing. (Doc. No. 3 at 18.)

Similarly, Mr. Love's assertion that the entire disciplinary process was "null and void from the beginning" pursuant to P5270.08 alludes to regulatory matters, but fails to establish a violation. BOP Program Statement P5270.08 simply summarizes the disciplinary procedure set forth in the federal prison regulatory scheme. *See* 28 C.F.R. §§ 541.1-.50. As a result, Mr. Love's reference to Program Statement P5270.08 does not present a claim.

Even if Mr. Love had alleged facts sufficient to establish regulatory violations, he would still not be entitled to habeas relief on that ground alone. Outside the limited amount of due process mentioned in *Wolff*, inmates have no constitutional right to federal prison officials' strict compliance with federal prison regulations. *See Sandin v. Conner*, 515 U.S. 472, 481-83 (1995); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003)("[T]here is no federal constitutional liberty interest in having . . . prison officials follow prison regulations."); *Kennedy v. Blakenship*, 100 F.3d 640, 643 (8th Cir. 1994); *cf. Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

**B.     Double Jeopardy**

Although Mr. Love states that both claims in the instant petition are exhausted, the record shows the double jeopardy claim is unexhausted. The Respondent has not raised the failure-to-exhaust issue; nonetheless, it is appropriate for the Court to consider the issue *sua sponte*. *See Bell v. Norris*, 586 F.3d 624, 633-34 (8th Cir. 2009) ("Although the district court elected to address this issue, noting that the state had not raised the issue of a procedural bar, it is appropriate to recognize a procedural bar in habeas cases whether or not raised by the state.") (citing *Day v. McDonough*, 547 U.S. 198, 205-10 (2006)); *see also King v. Kemna*, 266 F.3d 816, 821-22 (8th Cir. 2001).

Before filing a federal habeas petition, a federal inmate must first exhaust his or her

administrative remedies. *Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009); *United States v. Chappel*, 208 F.3d 1069, 1069 (8th Cir. 2000); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996); *Mason v. Ciccone*, 531 F.2d 867, 868-69 (8th Cir. 1976) (" '[A] federal prisoner must exhaust available administrative remedies within the correctional system prior to seeking extraordinary relief in federal court.' ") (quoting *Willis v. Ciccone*, 506 F.2d 1011, 1015 (8th Cir. 1974)). If an inmate has failed to exhaust his or her administrative remedies and the respondent has not raised that issue in his or her answer, the reviewing court must decide whether to require the inmate to first exhaust his or her administrative remedies, or to consider the merits of the unexhausted claim. *Granberry v. Greer*, 481 U.S. 129, 134-35 (1987).

In making this determination, the reviewing court should consider whether "the case presents an issue on which an unresolved question of fact or . . . law might have an important bearing." *Id.* at 134. If so, "comity and judicial efficiency may make it appropriate for the court to insist on complete exhaustion to make sure that it may ultimately review the issue on a fully informed basis." *Id.* at 135. If, however, the inmate "does not raise even a colorable federal claim, the interests of the petitioner, the warden, the [respondent] . . . and the federal courts will all be well served even if the [respondent] fails to raise the exhaustion defense, the district court denies the habeas petition." *Id.*; *see also Thompson v. Mo. Bd. of Parole*, 929 F.2d 396, 398 (8th Cir. 1991) (noting district court proceeded on merits to dismiss an unexhausted claim because it was not colorable); *cf. Brown v. Armontrout*, 853 F.2d 624, 626 (8th Cir. 1988) (Magill, J., dissenting) ("When the claims raised in a habeas petition are 'patently frivolous,' the administrative interests of both state and federal judicial systems in expedient resolution of the case outweigh any conceivable gain that may arise from remanding the case for a hearing on the exhaustion issue." (citing *Granberry*, 481 U.S. at 134-36)).

In the interests of judicial and administrative economy, this Court will exercise its discretion and evaluate Mr. Love's double jeopardy claim. It is well established that prison disciplinary proceedings "do not place an offender in jeopardy for purposes of the double jeopardy clause." *Kerns v. Parratt*, 672 F.2d 690, 691 (8th Cir. 1982); *see also United States v. Mayes*, 158 F.3d 1215, 1219-25 (11th Cir. 1998) (providing a detailed analysis as to how administrative sanctions for violating federal corrections regulations did not amount to punishment for purposes of double jeopardy clause). As a result, "there is no bar to separate criminal prosecution for an offense [committed in a prison]," *Kerns*, 672 F.2d at 691, and the BOP's disciplinary proceeding against Mr. Love in this case did not violate his Fifth Amendment right against double jeopardy.

### III. CONCLUSION

IT IS, THEREFORE, ORDERED that Mr. Love's § 2241 Petition (Doc. No. 2) is DISMISSED with prejudice and the requested relief is DENIED.

DATED this 9th day of November, 2011.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE